IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK M. ROZENSKI,

    Petitioner,                   No. CIV S-03-1665 GEB GGH P

    vs.

R.A. CASTRO, et al.,

    Respondents.              FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.SC. § 2254. Petitioner challenges his 2001 conviction for residential burglary (Cal. Penal Code § 459), assault with a deadly weapon and inflicting great bodily injury upon Diane Fox (Cal. Penal Code §§ 245, 12022.7(a)), assault with a deadly weapon on Philip Harney (Cal. Penal Code § 245(a)(1)), and violation of a protective order by an act of violence with a prior conviction within seven years for violating a protective order (Cal. Penal Code § 166(c)(4)). Petitioner is serving a sentence of 8 years.

    This action is proceeding on the amended petition filed November 4, 2004. Petitioner raises the following claims: 1) ineffective assistance of counsel; 2) Brady violation; 3)

\\\\\

insufficient evidence; and 4) jury instruction error. After carefully considering the record, the court recommends that the petition be denied.

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>, 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III.   Factual Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> Defendant and Diane Fox had a six or seven month romantic relationship, which ended in March 2000. On November 2, 2000, Fox obtained a domestic violence protective order against defendant. On December 27, 2000, Fox obtained another

3

protective order against defendant.

On January 9, 2001, Fox and a male friend, Phil Harney, went to a lounge where Fox consumed three glasses of wine and Harney consumed three or four drinks. After having dinner at a nearby restaurant, between 9:00 and 10:00 p.m., they took a taxi back to her home and went to bed.

Later, Fox got up to get some water and saw defendant in her family room. He told her he had come to fix a bicycle tire. Fox ran to Harney, who got up and told defendant to leave. After Fox and Harney went back to bed, Fox was awakened by defendant hitting Harney in the head with an object that looked like a bat. Harney was bleeding heavily from broken dentures and facial injuries. Harney went to a neighbor's house and called a taxi.

Fox watched Harney leave from her front step. As she walked back into her house, someone grabbed her by her hair and threw her to the ground, resulting in a bump on her head. She then felt something warm on her neck. Fox was attacked again. When Fox arose, she saw defendant in the dining room, drinking beer. Defendant gave Fox some beer and admitted he hit Harney, but claimed he did not hurt her. Fox was frightened and threw pots and pans at defendant until he left. Fox was intoxicated and did not realize her neck had been cut until deputy sheriffs of Sacramento County arrived. Fox had a beer in her hand, and Deputy Nicholas Smolich described Fox as under the influence and hysterical. Deputy Smolich found a bloody kitchen knife on the dining room floor.

Fox received 28 stitches on her neck and injuries to her lip, face, and head. Fox told the deputy she believed her throat had been cut during the fight with defendant.

After Fox arrived home from the hospital the next day, she was asleep on the couch when defendant awakened her between 10:00 a.m. and noon. Defendant apologized, but said he had not attacked her. Fox believed she hyperventilated and passed out. After Sheriff's deputies arrived again, defendant hopped the fence.

After the deputies left, defendant returned to Fox's patio area. Fox again screamed for help, and defendant fled once again. [Footnote]

> [Footnote: Fox did not have a telephone. She yelled "9-1-1" so that the neighbors would hear her and call.]

Fox told defendant's friend, Mark Henry, several days later that she did not see defendant cut her throat and that defendant might have been set up by a jealous drug dealer.

Defendant was interviewed the next day by Detective Clifford Lunetta. After being confronted with eyewitness statements, defendant admitted he was angry at Harney because he believed Harney had beaten up Fox. Defendant admitted he went to the house and hit Harney a number of times, but denied touching Fox. Defendant denied using any object to hit Harney.

4

No defense evidence was presented.

Respondent's August 2, 2005, Lodged Document No. 5, pp. 2-4.

IV. <u>Discussion</u>

    A. <u>Ineffective Assistance of Counsel</u>

*Standards for Ineffective Assistance of Counsel*

The test for demonstrating ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. <u>Id</u>. at 690, 104 S. Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. <u>Id</u>., 104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u> at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. <u>Strickland</u>, 466 U.S. at 693, 104 S. Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. <u>Williams v. Taylor</u>, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing <u>Lockhart v. Fretwell</u>, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. See Williams, supra, at 411, 65 S. Ct. 363. Rather, he must show that the [ ]Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-699, 122 S. Ct. 1843, 1852 (2002).

*Analysis*

Petitioner raised this claim in his habeas corpus petition filed in the California Supreme Court. Respondent's Lodged Document No. 6. The California Supreme Court denied the petition without comment or citation. Id. Because the only state court decision reviewing this claim is unexplained, the court will independently review the record to determine whether the denial of this claim was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner contends that his counsel was ineffective for failing to present evidence that Diane Fox was taking Paxil, a psychotropic drug, and had engaged in prior acts of self-mutilation, witnessed by her two former roommates, Mr. Grenz and Zachary Smith. Petitioner also alleges that counsel was ineffective for failing to object to hearsay and jury instructions, and for advising petitioner not to use his witnesses.

The court granted the prosecution's motion in limine to exclude evidence that Diane Fox was taking psychotropic medication and had engaged in previous acts of self-

6

mutilation. RT at 23-24. Therefore, counsel cannot be faulted for failing to introduce evidence regarding these matters.[1]

Respondent has also provided the declaration of petitioner's counsel in which he describes the investigation of petitioner's case:

> 3. That as part of my defense and representation of Petitioner Frank Rozenski, a private investigator, James Wagoner, was hired to conduct an investigation into the matter, which included interviewing Mr. Rozenski, the victims in the case and all potential exculpatory witnesses whose names were provided by Mr. Rozenski or whose names were set forth in the discovery provided to the defense.
>
> 4. That Mr. Wagoner initially interviewed Mr. Rozenski on March 30, 2001, at the Sacramento County Main Jail to determine his version of the facts and thereafter interviewed the victims and witnesses provided by Mr. Rozenski. Mr. Wagoner personally interviewed both victims Phil Harney and Diane Fox and obtained statements from each of them. Mr. Wagoner subsequently interviewed Mr. Rozenski several times after the initial interview at the main jail to obtain further information, including an interview which took place on April 14, 2001.
>
> 5. Mr. Wagoner interviewed other potential exculpatory witnesses provided by Mr. Rozenski, including Mark Henry, Mary Peterson, Leon Beers, the owner of the Time-Out Tavern, Sherry Kalkins, and Scott Grenz. A twenty two page statement was taken from Mr. Harvey by Mr. Wagoner and subsequently transcribed. Attempts were made to locate other witnesses, some of whom were either homeless or transient, without success. Every effort was made to find any and all witnesses who might have relevant or pertinent information. Many witnesses had no relevant information, could not remember certain facts, repeated hearsay statements which could not be verified or were in admissible or gave information which was potentially harmful to Mr. Rozenski's defense, including information regarding Mr. Rozenski's violent tendencies.
>
> 6. For example, one of the witnesses mentioned in Mr. Rozenski's petition for habeas corpus as an exculpatory witness, Scott Grenz, was personally interviewed by Mr. Wagoner on July 9, 2001. He told Mr. Wagoner that Mr. Rozenski has attacked him on at least two previous occasions and that he had filed charges against Mr. Rozenski in 2000. He further stated that he lost seven weeks of work because of injuries inflicted by Mr. Rozenski. Although Mr. Grenz also stated that he had seen Ms. Fox cut herself on the cheek with a steak knife, it was determined that Mr. Grenz's statement that Mr. Rosenski had physically attacked him on two separate occasions and caused him to lose seven weeks of work was so damaging that it would have negated any testimony regarding Ms. Fox's conduct.

---

[1] On appeal, petitioner argued that the trial court erred in refusing him to present evidence of Fox's drinking habits, her use of psychotropic medication and her prior acts of cutting herself. The California Court of Appeal rejected this claim. Respondent's Lodged Document No. 5, pp. 4-9.

7. Mr. Wagoner attempted to locate find [sic] another possible exculpatory witness mentioned in Mr. Rozenski's petition for habeas corpus, Zachary Smith. Mr. Rosenski did not have an address or telephone number for Mr. Smith. Mr. Wagoner attempted to locate Mr. Smith without success and finally, attempted to contact Mr. Smith through one of his mutual friends, Joseph McCoy. On July 9, 2001, Mr. Wagoner spoke to Mr. McCoy's mother. She stated that Mr. McCoy was homeless and rarely stayed in contact with her. She further stated that because of his drinking problem, he was no longer permitted to stay at the Salvation Army, Loaves and Fishes or any other local shelters. Mrs. McCoy was given Mr. Wagoner's telephone number and asked to call him if her son contacted her. Mr. Wagoner never heard back from Mrs. McCoy.

8. Impeachment information regarding Diane Fox was also investigated and sought. Some of the information was the subject of several defense motions in limine and ultimately was excluded by the magistrate.

9. All the information discovered by Mr. Wagoner was discussed with Mr. Rozenski and all decisions made to not call certain witnesses were tactical decisions made in conjunction with Mr. Rozenski's full understanding and agreement.

Respondent's Lodged Document No. 7.

Other than Grenz and Smith, petitioner identifies no other witnesses he claims counsel should have called. Accordingly, the court finds that petitioner's conclusory claim that counsel improperly advised him not to call his witnesses should be denied. James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") In addition, petitioner does not identify the hearsay he claims counsel failed to object to. Nor does petitioner identify the jury instructions he claims counsel should have objected to. These conclusory claims should be denied. Id.

After independently reviewing the record, the court finds that the denial of petitioner's ineffective assistance of counsel claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

B. Brady Violation

Petitioner raised this claim in his habeas corpus petition filed in the California Supreme Court. Respondent's Lodged Document No. 6. The California Supreme Court denied

8

the petition without comment or citation.  Id.  Because the only state court decision reviewing this claim is unexplained, the court will independently review the record to determine whether the denial of this claim was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner contends that the prosecution failed to disclose that Diane Fox was taking Paxil, was an alcoholic, had suffered two convictions for spousal abuse and had numerous arrests for drunk in public.  Petitioner also alleges that Phil Harney was not interviewed until three days after the incident, and that the testimony of both Harney and Fox was incredible and therefore, inadmissible.

The prosecution's failure to disclose material evidence favorable to the accused can violate the accused's due process right to a fair trial.  Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963).  A successful Brady claim requires demonstrating that evidence 1) "favorable to the accused, either because it is exculpatory, or it is impeaching," 2) was suppressed by the state (either willfully or not), and 3) is "material," by way of a "reasonable probability" that the disclosure would have produced a different result at trial.  Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936 (1999).

Petitioner's claims that Phil Harney was not interviewed until three days after the incident and that the testimony of Harney and Fox was inadmissible because it was incredible do not state Brady claims.  Rather, these allegations are so vague and conclusory that the court finds that they state no colorable claim for habeas relief.  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

As discussed above, the trial court granted the prosecution's motion to exclude evidence that Diane Fox was taking psychotropic medication, i.e. Paxil.  RT at 15, 23.  The prosecution could not have suppressed this evidence as it was a basis of a motion in limine.  In other words, petitioner's counsel was aware of this evidence.

The trial court also granted the prosecution's motion to exclude evidence regarding Diane Fox's drinking history.  RT at 23.  The prosecution could not have suppressed

1  evidence regarding Diane Fox's drinking history as it was a basis of a motion in limine. In other
2  words, petitioner's counsel was aware of this evidence.

3        Finally, petitioner argues that the prosecution suppressed evidence that Diane Fox
4  had been convicted of spousal abuse and arrested for being drunk in public on several occasions.
5  Although Fox's alleged arrests for being drunk in public were not mentioned by the parties or the
6  court during the discussion of the prosecutions' motion in limine, it is clear that the court's ruling
7  that no evidence would be permitted regarding Fox's drinking history would have included these
8  arrests. In any event, it is unlikely that evidence of these arrests would have produced a different
9  result at trial. During counsel's cross-examination of Fox, she testified that she was intoxicated
10 at the time of the incident. RT at 112. In addition, Sacramento County Deputy Sheriff Smolich
11 testified that when he arrived on the scene, Fox appeared to be "somewhat" under the influence.
12 RT at 123. Sacramento County Deputy Sheriff Trevino testified that when he arrived on the
13 scene, Fox appeared to be intoxicated. RT at 208.

14       Because a fair amount of evidence was presented that Fox was intoxicated on the
15 night of the incident, there is no reasonable probability that the outcome of the trial would have
16 been different had evidence been presented that Fox had been arrested for drunk in public on
17 several occasions. The jury was presented with sufficient by which to gauge the effect of alcohol
18 on Fox's ability to perceive the events on the night of the incident.

19       Finally, petitioner argues that the prosecutor withheld evidence that Fox had once
20 been convicted of spousal abuse. As described in the summary of facts above, the evidence that
21 petitioner assaulted both Harney and Fox was strong. Had the jury been presented with this
22 evidence, there is no reasonable probability that the outcome of the trial would have been
23 different.

24       After independently reviewing the record, the court finds that the denial of this
25 claim by the California Supreme Court was not an unreasonable application of clearly established
26 Supreme Court authority. Accordingly, this claim should be denied.

C. <u>Insufficient Evidence</u>

Petitioner raised this claim in his habeas corpus petition filed in the California Supreme Court. Respondent's Lodged Document No. 6. The California Supreme Court denied the petition without comment or citation. <u>Id.</u> Because the only state court decision reviewing this claim is unexplained, the court will independently review the record to determine whether the denial of this claim was objectively unreasonable. <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner identifies grounds three as involving a claim of "false accusations, hearsay, lack of evidence." Amended Petition, p. 6. Petitioner describes the supporting facts of this claim as follows:

> Changing their stories at least twice, lying about what happened that night. No prints on the knife, no other weapon, was produced in Mr. Harney's case. He also did not identify me in court. Mr. Harney was not interviewed until 3 days later and has no medical report to prove his dentures were broken or how. I was not at the scene of the crime when Ms. Fox was cut. Donald Dennis her roommate can confirm this fact at a deposition or evidentiary hearing.

Amended Petition, p. 6.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Under <u>Jackson</u>, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. <u>Adamson v. Ricketts</u>, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), <u>vacated on other grounds</u>, 789 F.2d 722 (9th Cir. 1986) (en banc), <u>rev'd</u>, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." <u>Jackson</u>, 443 U.S. at 319, 99 S. Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could have reached the same conclusion that these jurors

reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc). United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991) (emphasis added).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

Petitioner argues that there was insufficient evidence to support his conviction because Fox and Harney were not credible witnesses because they changed their stories. In reviewing an insufficiency of the evidence claim, the court does not resolve credibility issues. Schlup v. Delo, 513 U.S. 298, 330, 115 S. Ct. 851 (1995) (stating that under Jackson resolving credibility issues is generally beyond the scope of appellate review).

Petitioner also argues there was insufficient evidence because no fingerprints were found on the knife. Identification Technician McGinnis testified that the handle of the knife was

textured. RT at 229. McGinnis testified that textured items are not conducive to finding latent fingerprints on. RT at 229. Despite the lack of fingerprint evidence, the circumstantial evidence was sufficient on which to find petitioner guilty of assaulting Fox. While Fox testified that she did not see the person who grabbed her hair, threw her to the ground and cut her (RT at 48), she testified that right after this incident she saw petitioner sitting on a chair in her dining room. RT at 50-51. Based on this testimony, a reasonable jury could find that petitioner was the person who assaulted Fox.

Petitioner also argues that Harney did not identify petitioner in court. While this is true, petitioner told the police that he went to Fox's house and assaulted Harney. RT at 189. Based on this admission, Harney's inability to identify petitioner in court was not material.

Petitioner also argues that no medical report was presented to prove that Harney's dentures were broken. Harney himself testified regarding the injuries he suffered. The prosecution was not required to introduce medical reports to prove the extent of Harney's injuries.

Finally, petitioner argues that he was not at the crime scene when Fox was cut and that Donald Dennis could confirm this. As discussed above, Fox's testimony was sufficient evidence on which a reasonable jury could find that petitioner assaulted her. In resolving an insufficiency of evidence claim, the court looks only at the evidence presented to the jury.

After independently reviewing the record, the court finds that the denial of this claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

In his traverse, petitioner raises additional arguments in the section of the traverse addressing his insufficiency of evidence claim. Although it is unclear whether these arguments are exhausted, the court may consider them because they are without merit. 28 U.S.C. § 2254(b)(2).

\\\\\

1    Petitioner argues that prosecutor knowingly presented false testimony. "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Bagley, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381-82 (1985).

Petitioner argues that the prosecution presented false testimony that Fox received her injuries on the same night that Harney received his. For example, petitioner claims that a deputy sheriff falsely testified that the injuries occurred on the same night. Other than his own conclusory assertion, nothing in the record suggests that the evidence presented by the prosecution that Fox and Harney received their injuries on the same night was false. Fox herself testified that she and Harney received their injuries on the same night, and petitioner does not question her testimony. The testimony of the deputy sheriffs who responded to the scene was consistent with the testimony of Fox regarding the incident. Petitioner's claim that the prosecution presented false testimony is unsupported and should be denied.

D.  Jury Instruction Error

Petitioner contends that instructing the jury with CALJIC 17.41.1 (jurors should advise the court if other jurors are ignoring the jury instructions or otherwise deciding the case based on improper bases) unconstitutionally deprived petitioner of due process. The precise issue was decided adversely to petitioner in Brewer v. Hall, 378 F.3d 952 (9th Cir. 2004). No more need be discussed.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within ten days after service of the objections.  The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
5  DATED:   2/16/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
roz1665.157